Lance E. Shurtleff, Esq. WSB#6-3794
Christine Stickley, Esq. WSB#6-3533
Gordon Rees Scully Mansukhani, LLP
555 17th St., Suite 3400
Denver, CO 80202
T: (303) 534-5160
F: (303) 534-5161
lshurtleff@grsm.com
cstickley@grsm.com
*Attorneys for Defendants Killpack*
*Trucking, Inc. & Jaysen Thompson*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **BRYAN SILVERTHORN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **KAYLA LEMMINGS** | ) | |
| | ) | |
| **Consolidated Plaintiffs,** | ) | |
| | ) | **Case No. 18-CV-209-J** |
| **v.** | ) | **Case No. 18-CV-210-J (Consolidated)** |
| | ) | **Case No. 18-CV-211-J (Consolidated)** |
| **KILLPACK TRUCKING, INC. and** | ) | |
| **JAYSEN THOMPSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**BRIEF IN SUPPORT OF DEFENDANTS
KILLPACK TRUCKING, INC.'S AND JAYSEN THOMPSON'S
MOTION TO STRIKE PLAINTIFFS' EXPERT WITNESS LEW GRILL**

---

Defendants Killpack Trucking, Inc. ("Killpack") and Jaysen Thompson ("Thompson"), through counsel, Gordon Rees Scully Mansukhani, LLP, and pursuant to Local Rule 7.1(b)(2), submit the following brief in support of their Motion to Strike Plaintiffs' Expert Witness Lew Grill as follows:

### I.    INTRODUCTION

On December 14, 2016, Jaysen Thomspon was driving a tractor trailer traveling west on I-80 from North Platte, Nebraska to Salt Lake City, Utah for Killpack Trucking, Inc. ("Killpack").

Near Pine Bluffs, Wyoming, Jaysen Thompson had his cruise control set to 65 mph, well within the posted limit, and was following behind another tractor trailer at a safe distance.  The truck in front of Mr. Thompson began to switch lanes towards the passing lane and Mr. Thompson recognized his following distance for any possible vehicle in the driving lane in front of him just increased.  Mr. Thompson reached to touch his phone to illuminate the phone and check the time. (*See* Deposition of Jaysen Thompson, at pp. 77:14 – 79:11, attached as Exhibit A).

The phone was not in its usual spot; Mr. Thompson looked away from the road to find his phone.  (*Id.* at p. 71:17-72:3).  Bryan Silverthorn was driving a 1993 Chevrolet S-10 Blazer at 30 mph, 50 miles below the posted speed limit, in the right-hand travel lane of WB I-80.  When Mr. Thompson "brought [his] eyes back up to the road…the car was right there so close [he] couldn't even react, other than going for the brakes.  (*Id.*)  Mr. Thompson did not touch or even see his phone during this time and finally found it on the floor of his vehicle after the accident.   Mr. Silverthorn and Ms. Lemmings have sued Killpack and Mr. Thompson to recover from injuries they suffered in the tragic accident.

Plaintiffs designate commercial motor carrier expert witness, Lew Grill, to testify on their behalf.  Essentially, Mr. Grill contends that drivers of commercial motor vehicles, as a class, are subject to "performance standards" that are more stringent than non-commercial motorists.  A good portion of his report, which is attached hereto as Exhibit B, is dedicated to discussing why these higher performance standards should be universally applied to commercial motor carriers. Mr. Grill also cites various rules, guidelines and federal regulations which he contends were violated by Mr. Thompson and Killpack.

Mr. Grill's testimony is directly contrary to well-established Wyoming law that professional drivers are not, as a class, subject to a heightened standard of care.  Rather, all drivers are subject to the same standard of care under the circumstances, although the trier-of-fact may take into account a driver's unique knowledge, experience and skills when determining whether the standard was breached.  Mr. Grill makes very little, if any, attempt to give opinions within this framework.  He does little more than make conclusory statements that relatively straightforward rules and regulations were violated. Ultimately, he does not offer any opinions that will aid the trier of fact in a meaningful way, and his testimony should be prohibited pursuant to FED. R. EVID. 702.

## II.   STANDARD OF REVIEW

Expert testimony is generally admissible if it meets the requirements of FED. R. EVID. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  Rule 702 and *Daubert* impose a gatekeeping function on district courts to ensure all expert testimony, whether scientific, technical, or any other specialized knowledge, is both reliable and relevant.  *Kumho Tire Co., Ltd.,* 526 U.S. 137, 152-53 (1999).  In order to make the requisite findings, the court must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion.  Second, the court must determine whether the expert's opinions are sufficiently reliable.  FED. R. EVID. 702; *Kumho Tire Co.*, 526 U.S. at 152-

3

53; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). Finally, the court must determine whether the proposed expert testimony will assist the trier of fact. FED. R. EVID. 702.

The purpose of expert testimony is to "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. "Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 591-592 (1993). "Opinions are valueless as evidence without exploration of the underlying facts and rationale showing the path from the facts to the opinion." *United States v. R. J. Reynolds Tobacco Co.*, 416 F. Supp. 316, 325 (D. N.J, 1976).

### III.    ARGUMENT

**A.    Grill Creates an Inappropriate Higher Standard of Care for Drivers of Commercial Vehicles.**

The Wyoming Supreme Court held over thirty years ago that professional truck drivers are not held to a higher standard of care. *Cervelli v. Graves*, 661 P.2d 1032, 1037-39 (Wyo. 1983). "It is one thing to say that, if so found, a jury can take account of an individual's exceptional knowledge or skill in determining negligence; it is quite another to say that as a matter of law, because he is a truck driver, an individual is held to a higher standard of care than other drivers." *Id*. at 1037-38. Thus, the Court expressly declined to treat negligence cases involving professional drivers as malpractice cases. *Id*. Rather, "the general state of the law supports the opposite conclusion that all drivers, regardless of class, are held to the same standard of care--due care under the circumstances." *Id*. at 1039; *see also State, Dept. of Transp. v. Robbins*, 2011 WY 23, ¶ 17, 246 P.3d 864, 867 (Wyo. 2011) (reaffirming that professional drivers are not held to a higher standard of care).

Mr. Grill turns Wyoming law on its head with a back door attempt to do little more than apply a higher standard of care to commercial motor carriers *as a class*. While giving lip service to the fact

4

that the standard of care is the same for professional drivers, he attempts to distinguish his own opinions, arguing that in his view the performance standard for commercial motor vehicle operators is absolutely different. (*See*, Exhibit B at II.C.) Simply put, his opinions rest upon the foundation that commercial motor carriers are, as a class, subject to more rigorous standards than non-commercial motorists by virtue of their membership in that class. This opinion, by definition, applies a higher standard of care (i.e. a professional driver malpractice) in direct opposition to Wyoming precedent.

In Section II. of Mr. Grill's report, he discusses in detail the characteristics he finds unique to motor carriers as a class, without a single specific reference to either defendant in this case, in an effort to justify his higher "performance standards." (Exhibit B at pp. 8-13). Although he cursorily acknowledges the standard of care is the same for every road user, Mr. Grill states "the performance standards to accomplish this standard of care are much different for truck drivers than operators of smaller vehicles."[1] In fact, according to Mr. Grill, commercial motor vehicles "require a higher degree of safe driving performances" and "greater driver performance duties" in order to achieve the same standard of care as other vehicles. (*Id.* at pp. 9-10). This section of Mr. Grill's report can be found in virtually every expert report he authors. Mr. Grill's higher standard for truck drivers is central to his opinion that "Defendant Thompson knew or should have known [that he] has different and unique performance objectives when operating a CMV, including greater anticipation than operators of non-CMV's to avoid becoming involved in a collision." *Id.* at p. 13, section III.A.1.

---

[1] Mr. Grill incorrectly identifies the standard of care required and specifically states that the "standard of care of truck drivers is the same for every road user, in respect that the truck must be operated in a manner that avoids crashing into things, or having other collide with it." Exhibit B at p. 8, Section II.B.

Mr. Grill's opinions stray far beyond the unique skills and experiences of the individual driver, as approved in *Cervelli*, and cross the line into professional driver malpractice (i.e. applying the same standards to a class of person). For example, Mr. Grill attempts to apply accident preventability as a standard unique to commercial motor carriers. (Exhibit B at pp. 23-28). Whether the accident was preventable pursuant to this standard unique to truck drivers has absolutely no bearing on any issue this case, as that standard is not legally imposed in the State of Wyoming. At least two courts that have considered a similar issue have refused to allow evidence that an accident was "preventable" by a professional driver (which is a question carriers commonly analyze as part of their internal investigations), as it adds little or nothing to the question of actual liability, and as a result it is much more prejudicial than probative under Section 403 of the Rules of Evidence. *See, e.g., Villalba v. Consol. Freightways Corp.*, 2000 WL 1154073,* 6 (N.D. Ill. 2000)(unpublished) and *Tyson v. Old Dominions Freight Line, Inc.*, 608 S.E.2d 266, 270 (Ga. App. 2004). This reasoning is even more applicable in this case, where Mr. Grill is attempting to impose the concept as a more stringent standard of care unique to commercial motor carriers.

Mr. Grill's opinions are contrary to Wyoming law, and his "performance standards" testimony has been excluded by the Federal District Court, District of Wyoming in the past for this very reason. In *Langille v. McLane Foodservice, Inc.*, 2013 WL 8717948 (D.Wyo. 2013)(unpublished), this Court expressly prohibited Mr. Grill's testimony on the standard of care. In that case, the Court discussed that the relevant inquiry is not on commercial truck drivers as a class, but rather on the "individual driver's experience and knowledge." *Id*. at * 7. It noted that "the jury must be allowed to consider all of the circumstances surrounding the occurrence, including the characteristics of the actors in reaching their decision." *Id.* Thus, the Court prohibited "Mr. Grill from testifying directly or

6

indirectly as to the standard of performance or the standard of care for a commercial truck driver."
*Id*. The same approach should be taken here.

Admittedly, the *Langille* Court did allow Mr. Grill to testify about industry standards and practices, differences in driving a commercial vehicle, and the driver's experience, training and knowledge. *Id*. However, in this case Mr. Grill simply offers no opinions in these areas that would be helpful to the trier of fact. Rather, all roads for each and every opinion he provides, in this case, lead back to his main thesis that commercial motor vehicle drivers must meet higher "performance standards" than non-commercial drivers.

**B.      Grill's Testimony is Not Helpful to the Trier of Fact.**

Mr. Grill clearly never considered Defendant Thompson's unique experiences and knowledge. Of the 32 pages constituting Mr. Grill's expert report, only one-and-a-half pages contains a discussion of the background facts of this case. Of that, there is absolutely no discussion specific to Mr. Thompson or Killpack. (*See* Exhibit B at pp. 2-3.) Instead, Mr. Grill does little more than make conclusory statements based entirely on hindsight about Mr. Thompson's knowledge and skills and Killpack's safety management systems. (*Id.* at 13-28). One such conclusion is that "[had] Mr. Thompson been given a CDL skills test at the time of this collision, he would have failed to meet the standards necessary to receive his CDL." (Exhibit B at p. 14, III.2.b.(1)). This "opinion" amounts to nothing more than a conclusory statement made because an accident occurred and without any discussion of Mr. Thompson's prior training, education, or skills evaluation. These points are useless without some explanation as to their role in proximately causing the accident, with specific reference to principles of expertise that fall outside of the normal understanding of the average juror.

Mr. Grill likewise does not offer any relevant opinions on industry standards to assist the jury in a meaningful way. Instead, he simply quotes various Federal Motor Carrier Safety Regulations and rules from the Wyoming CDL manual, then provides conclusory statements that Mr. Thompson and Killpack violated the rules and regulations he cites. (*See* Exhibit B at pp. 13-28). Other than conclusory findings, Mr. Grill provides no insight that would assist a jury as to how the rules and regulations apply in the industry as a whole or in the context of the unique circumstances of this case. Instead, he simply applies his view of the facts of the case to the regulations and rules he cites, and states the rules were violated. (*See, e.g*., Exhibit B at pp. 13-28).

An expert must do more than simply apply the facts of the case to law, he must assist "the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony is within the juror's common knowledge and experience." *United States v. Garcia*, 635 F.3d 472, 476-77 (10th Cir. 2011). Opinions "are valueless as evidence without exploration of the underlying facts and rationale showing the path from the facts to the opinion." *Addleman v. Keller Transp., Inc.*, No. 13-CV-230-S, 2014 U.S. Dist. LEXIS 184591, at \*14 (D. Wyo. Dec. 9, 2014)(unpublished)(*quoting U.S. v. R. J. Reynolds Tobacco Co.*, 416 F. Supp. 316, 325 (D. N.J. 1976). Mr. Grill does nothing to illuminate the path from the few facts he recognizes to his opinions. Nothing about the rules, regulations and general statements cited by Mr. Grill in his report (Exhibit B at pp. 13-28) are so complicated that an expert is needed to testify that they were or were not violated.

That is not to say that expert testimony about the Federal Motor Carrier Safety Regulations, or even other principles of safe driving, are off limits. It certainly might be true in some cases that an

expert can shed light on principles or certain practices encompassed in the regulations. However, Mr. Grill does not even attempt to provide any such insight in this case. Instead he argues for a higher standard of care upon commercial motor carriers as a class. Regarding the unique and specific facts of this case, Mr. Grill only states that Mr. Thompson and Killpack violated cherry picked rules and regulations.

For example, one of Mr. Grill's opinions is: "Defendant Thompson had a duty to see and perceive hazards before they become emergencies, and to have a plan for what to do when faced with a hazard." (Exhibit B at p. 19). In support of the opinion, he cites broad rules taken from the Wyoming CDL Manual. One rule he relies upon, for example, states: "You will have more time to act if you see hazards before they become emergencies" and "There are often clues to help you see hazards. The more you drive, the better you can learn to see hazards." *Id*. This rule is not beyond the purview of the ordinary juror. In fact, it would apply to every motorist on the road regardless of the size of the vehicle being driven. The same can be said for every Wyoming CDL Manual statement cited by Mr. Grill (i.e. "You must adjust your speed depending on driving conditions," "You must always be able to stop within the distance you can see ahead." etc.). *Id*. Mr. Grill simply fails to explain how his unique expertise will assist the jury in understanding these rules in context with the specific facts of this case.

Ultimately, Mr. Grill does not offer any opinions that would assist the trier-of-fact in a meaningful manner. Instead, he attempts to impose a higher standard of care upon the Defendants in violation of clearly established Wyoming law, and gives conclusory statements that relatively straightforward various rules and regulations were violated. His testimony will do nothing but

9

confuse the otherwise simple issues the jury must decide. Accordingly, his testimony should be prohibited.

### III.    CONCLUSION

For the foregoing reasons, Defendants Jaysen Thompson and Killpack Trucking, Inc. request this Court grant this Motion in their favor and preclude the expert testimony of Plaintiffs' retained commercial motor carrier expert, Lew Grill, entirely.  In the alternative, Defendants request the Court to limit Mr. Grill's testimony appropriately, including but not limited to prohibiting his testimony on a higher standard of care or "performance standards" applicable only to commercial motor carriers, the preventability, and his opinions on whether certain regulations or rules were violated by Defendants Thompson and/or Killpack.

Respectfully submitted this 2nd day of June, 2020.

/s/Lance E. Shurtleff
Lance E. Shurtleff
Christine Stickley
Gordon Rees Scully Mansukhani, LLP
555 17th Street, Suite 3400
Denver, Colorado 80202
Phone: (303) 200-6849
Fax: (303) 534-5161
Email: lshurtleff@grsm.com
cstickley@grsm.com
***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 2, 2020, the foregoing BRIEF IN SUPPORT OF DEFENDANTS KILLPACK TRUCKING, INC.'S AND JAYSEN THOMPSON'S MOTION TO STRIKE PLAINTIFFS' EXPERT WITNESS LEW GRILL was filed with the Court via CM/ECF which will send an electronic copy to all counsel of record:

Margaret M. White
Karpan and White, P.C.
1920 Thomas Ave., Suite 610
Cheyenne, WY 82001
mmw@karpanwhite.com

Scott Blair
Brain Injury Law of Seattle
437 5th Ave. S., Suite 103
Edmonds, WA 98020
scott@braininjurylawofseattle.com
*Counsel for Plaintiff Silverthorn*

Laurence W. Stinson
Stinson Law Group, P.C.
1421 Rumsey Ave.
Cody, WY 82414
laurence@stinsonlawyers.com

Michele Reinhart Levine
Richard J. Martin
FairClaim Law
Linnell Newhall Martin & Schulke, P.C.
120 – 1st Avenue North
Great Falls, MT 59401
mlevine@fairclaimlaw.com
rmartin@fairclaimlaw.com
(admitted pro hac vice)
*Counsel for Kayla Lemmings*

*/s/Lance E. Shurtleff*
Lance E. Shurtleff

11